CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2017 SEP 28 PM 4: 12

DEPUTY CLERK_____

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

GREGORY WAYNE CULLAR, §
§
Plaintiff, §
§
v. § No. 7:16-CV-0091-O-BL
§
NANCY A. BERRYHILL,[1] §
Acting Commissioner of Social Security, §
§
Defendant. §

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2] *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Answer (doc. 6), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (doc. 8), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Br. (doc. 10); Def.'s Br. (doc. 11); Pl.'s Reply (doc. 12). The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be reversed and remanded for further consideration.

---

[1]On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

[2]Title II governs disability insurance benefits. *See* 42 U.S.C. §§ 401-34. This recommendation will often refer to Plaintiff as Claimant, a designation used in social security cases.

## I.    BACKGROUND

Plaintiff initially claimed disability due to a bipolar disorder, high blood pressure, and thyroid issues. R. 291. He filed an application for DIB in September 2014, alleging a May 30, 2010 onset of disability. R. 263. He later amended the onset date to February 1, 2013. *See* R. 261. The change resulted from an unfavorable decision on a prior application. *See* R. 150-61, 287. His date of last insured ("DLI") passed on June 30, 2016. R. 287. Therefore, the most relevant time period for his application and the Court's review commenced in February 2013 and continued through June 2016.

The Commissioner denied the applications initially and on reconsideration. *See* R. 166-99. On December 15, 2015, Administrative Law Judge ("ALJ") Susan Conyers held a hearing on Plaintiff's claim. *See* R. 119-49. On March 28, 2016, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing his past relevant work. R. 18-30. Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. § 404.1520(a)(4))[3] the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the amended onset date. R. 20.

The ALJ next determined that Plaintiff has three severe impairments: (1) bipolar, (2) obesity, and (3) degenerative disc disease. *Id.* Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the listings.[4] R. 25-26.

---

[3] In March 2017, the Social Security Administration amended many regulations. However, the pertinent version for this case is the one in effect when the ALJ issued her decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam). Except to bring attention to the effective date of an amended provision, this recommendation will cite to the applicable version without parenthetical year information.

[4] Section 404.1525 explains the purpose and use of the listings of impairments.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[5] to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional physical limitations: (1) occasionally climb ladders, ropes, and scaffolds; (2) occasionally stoop and crouch; and (3) frequently balance, kneel, and crawl.[6] R. 27. Due to Plaintiff's mental impairments, the ALJ also found that, while Plaintiff could perform "simple and detailed tasks," he could not perform complex tasks. *Id.* The ALJ also found that Plaintiff could "interact with others, accept instructions and respond appropriately to routine changes in the workplace." *Id.*

Based upon the RFC determination and testimony from a vocational expert ("VE") about the exertional demands and skill requirements of Plaintiff's prior jobs, the ALJ concluded that Plaintiff could perform his past relevant work as a flagger, which the VE characterized as light. R. 29. At Step 4 of the evaluative sequence, the ALJ thus found that Plaintiff was not disabled within the meaning of the Social Security Act between February 1, 2013, and the date of the ALJ's decision. R. 29-30.

---

[5]Section 404.1545(a)(1) explains that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. 20 C.F.R. § 404.1546(c). However, that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 404.1545(a)(3).

[6]The regulations address physical exertion requirements and explain:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). In general, light work "requires being on one's feet" for six hours of an eight-hour workday while "[s]itting may occur intermittently during the remaining time." Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5-6 (S.S.A. 1983).

The Appeals Council denied review on May 25, 2016, because it "found no reason" to review the ALJ's decision. R. 1-3. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on July 21, 2016. *See* Compl. He presents two issues for review, including a failure to properly weigh medical opinions of treating sources when determining his RFC. *See* Pl.'s Br. at 1.

## II. LEGAL STANDARD

In general,[7] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

---

[7]The Act provides an alternate definition of disability for blind individuals who are fifty-five years of age or older. *See* 42 U.S.C. § 423(d)(1)(B). This provision is inapplicable on the current facts.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448. The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). For Steps 1 through 4, the claimant has the burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. If the Commissioner carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

## III. ANALYSIS

This appeal raises the following issues: (1) whether the ALJ properly considered medical opinions of his treating psychiatrist, Edward Luke, Jr., D.O.; examining psychologist, Reda Rasco, Psy.D.; and examining physician, Jarome Adams, M.D., and (2) whether the ALJ failed to appropriately weigh medical opinions from treating sources (Robert Borchardt, M.D., and Dr. Luke) when assessing his RFC. *See* Pl.'s Br. at 1. These issues overlap to some extent and will be addressed together. Claimant contends that the ALJ completely failed to weigh medical opinions of Drs. Luke, Rasco, and Adams, while improperly considering medical opinions of Drs. Luke and Borchardt.

When considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions.[8] *See* 20 C.F.R. § 404.1527(b) (effective Aug. 24, 2012, to Mar. 26, 2017). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination of the claimant), or non-examining sources (a physician who reviews only the claimant's medical record). *See generally* 20 C.F.R. § 404.1502 (effective June 13, 2011, to Mar. 26, 2017). The Fifth Circuit has "long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting

---

[8]As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). These regulations, however, reserve some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* § 404.1527(d). Effective March 27, 2017, § 404.1527 sets out a two-tiered approach for applying the regulation: "For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." Regardless, the pertinent version for this appeal remains the one in effect when the ALJ issued his decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam).

*Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Nevertheless, even opinions from a treating source are "far from conclusive," because ALJs have "the sole responsibility for determining the claimant's disability status." *Id.*; *accord Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

"After identifying relevant medical opinions of treating physicians, ALJs must determine whether any such opinion is entitled to controlling weight." *Bentley v. Colvin*, No. 3:13-CV-4238-P, 2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (citing 20 C.F.R. § 404.1527(c)(2) and its Title XVI counterpart, § 416.927(c)(2)). When identifying and considering relevant opinions, ALJs "must remember" that some medical records, such as medical source statements provided by a treating source, "may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." Titles II & XVI: Med. Source Ops. on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *4 (S.S.A. July 2, 1996).

The regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." 20 C.F.R. § 404.1527(c)(1)-(6) (effective Aug. 24, 2012, to Mar. 26, 2017).[9] "When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 WL 2931884, at *3 (N.D.

---

[9]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012, to Mar. 26, 2017). Even with the recent regulatory amendments, these factors remain relevant for claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527(c) (effective Mar. 27, 2017). For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c provides details on how the administration considers and articulates medical opinions and prior administrative medical findings.

Tex. June 30, 2014) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)); *accord* 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton*, 209 F.3d at 453.

In addition, under 20 C.F.R. § 404.1520b(c)(1), "the ALJ may re-contact a treating physician or other medical source if there is insufficient evidence to determine whether the claimant is disabled." *Perry v. Colvin*, No. 3:13-CV-2252-P, 2015 WL 5458925, at *7 (N.D. Tex. Sept. 17, 2015); *accord Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670, at *7 (N.D. Tex. Feb. 13, 2015) (accepting recommendation of Mag. J. which recognized that, effective March 26, 2012, this new regulation replaced the former mandatory requirement of § 404.1512(e) applied in *Newton*). Further, "if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [the claimant is] disabled," § 404.1520b(c) provides "various options, including re-contacting a treating physician or other medical source, to resolve an inconsistency or insufficiency of evidence." *Bentley*, 2015 WL 5836029, at *8 (citing 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (effective Mar. 26, 2012 to Mar. 26, 2017)).

ALJs who find a treating source opinion not entitled to controlling weight must consider the six factors of § 404.1527(c) to properly assess the weight to give such opinions. *Newton*, 209 F.3d at 456. However, "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The [ALJ] need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A,

2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (emphasis added); *accord Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008) (accepting recommendation of Mag. J.). *Newton*, furthermore, does not require the detailed analysis when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." 209 F.3d at 458. Likewise, the detailed analysis under *Newton* is not necessary when the ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who "have specific medical bases for a contrary opinion." *Id.*

The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). ALJs have considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56. Additionally, for good cause shown, an ALJ may assign little or no weight to an opinion from a treating source. *Id.* "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

The parties appear to treat all opinions of Drs. Borchardt and Luke as medical opinions. However, to be clear, opinions that (1) conclude that a claimant is disabled or unable to work due to impairments or (2) assess a claimant's RFC "are not medical opinions" under the regulations. *See* 20 C.F.R. § 404.1527(d) (effective Aug. 24, 2012, to Mar. 26, 2017). Such opinions are specifically excepted from the definition of "medical opinions" because the opinions address "issues reserved

to the Commissioner," *id.*, and "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or even special significance," *Dobbins v. Colvin*, No. 6:14-CV-055-BL, 2016 WL 1179020, at *3 (N.D. Tex. Feb. 25, 2016) (recommendation of Mag. J.), *adopted by* 2016 WL 1248911 (N.D. Tex. Mar. 25, 2016). ALJs do not err when they fail to credit legal conclusions on issues reserved to the Commissioner. *Tucker v. Astrue*, 337 F. App'x 392, 396-97 (5th Cir. 2009) (per curiam).

In this case, there appears to be no dispute that Claimant has physical and mental impairments that limit his ability to work. The dispute arises from what effect those impairments have on his functional ability to perform his prior relevant work as a flagger. There is no need to reiterate all of the medical evidence and this recommendation will cite to the medical record as needed to address the issues raised in this appeal.

Medical records of Dr. Borchardt dated prior to May 17, 2014, show treatment for hypertension and thyroid problems in May 2014 and June 2013 and unspecified reasons twice in March 2011. R. 414. Shortness of breath and rapid heart beat prompted the two visits in March 2011. *See* R. 420, 424. Claimant visited Dr. Borchardt for medication refills in June 2013 and May 2014. R. 415, 417. In both visits, Claimant felt well; had full range of motion in his neck and normal strength in all muscles; and examination of the lumbar spine revealed no tenderness, pain, swelling, or edema or erythema of surrounding tissue. *See* R. 415-18. The June 2013 review of his systems was unremarkable in all respects and it was notable only for abnormal blood pressure due to being out of medication for two days in May 2014. *See* R. 415, 417. In June 2013, Dr. Borchardt did, however, note that Claimant was a "[l]arge man with psychiatric problems." R. 417. At that time, the doctor assessed hypothyroid and developed a medication and diet plan. R. 418. In May 2014, he assessed

hypertension, developed a medication plan, and discussed diet and exercise with Claimant. R. 416.

On October 28, 2014, Dr. Adams interviewed and examined Claimant. R. 472-74. Physical examination revealed very limited range of motion in the neck; modestly limited range of motion in his hips and knees; difficulty with heel, toe, and tandem walking; hypoactive knee jerk reflexes; ankle jerk reflexes were absent on the left and nearly absent on the right; slightly decreased strength in knees and ankles; hypesthesia (decreased sensation) in the left foot; and tightness at the knee and thigh muscles with straight leg raising. R. 473. Claimant "was very hesitant to lie down" and "did require a good deal of help coming back up to a sitting position." *Id.* Based on the interview and one-time examination Dr. Adams formed the following impressions: (1) bipolar disorder; (2) severe and uncontrolled hypertension; (3) probable lumbar disc degenerative disease and degenerative arthritis, and (4) probable cervical disc disease and degenerative arthritis. R. 473-74. He opined that, with respect to the ability to do work activities, Claimant "would have difficulty functioning in work requiring body mobility because of the limited R.O.M. of neck and low back." R. 474. He further opined that Claimant's high blood pressure "puts him at high risk for vascular events." *Id.*

The next day, Dr. Rasco psychologically evaluated Claimant and reviewed records of Dr. Borchardt. *See* R. 479-82. She observed a person who was disheveled, ambulated slowly, and appeared unsteady on his feet. R. 479. Claimant's chief complaints were high blood pressure, hypo-thyroidism, and bipolar symptoms. *Id.* He reported significant bipolar symptoms in his daily life in addition to anger management issues, including difficulties getting along with coworkers and authority figures. *Id.* He also stated that he had "even got into a physical altercation with one of his bosses in the past." R. 479-80. Dr. Rasco found Claimant's "ability to complete everyday tasks and activities appears heavily dependent on his mood, which often fluctuates between both manic and

11

depressive episodes." R. 480.

Dr. Rasco's mental status examination revealed Claimant to be somewhat withdrawn with signs of anhedonia, but had appropriate abstract thinking and thought content while exhibiting no evidence of looseness of associations or circumstantiality. R. 481. With respect to mood, Dr. Rasco noted depressive episodes "with more down days than not" and manic episodes that "include[d] feelings of grandiosity, insomnia, talkativeness, flight of ideas, excessive pleasure, and increased agitation and distractibility" *Id.* Claimant exhibited a flat affect and made minimal eye contact. *Id.* Dr. Rasco viewed Claimant as possessing average intelligence, poor judgment (based on past legal issues and substance abuse), and appropriate insight, although his insight "may change based on his mood." R. 481-82. She diagnosed him with "Bipolar I Disorder, Moderate" with substance abuse disorders in full remission. R. 482. She noted a fair prognosis and a psychological test score "in the normal range." *Id.* Regarding Claimant's functional capacity, she merely stated that he "reportedly cannot maintain effective social interaction on a consistent and independent basis with the public, or deal with normal pressures in a competitive work setting." *Id.*

In January 2015, Dr. Luke completed a Medical Opinion Questionnaire regarding mental impairments.[10] *See* R. 491-93. He stated that Claimant "continues to require medication and is unable to work." R. 491. When rating twenty-five mental abilities and aptitudes necessary to work, Dr. Luke rated four abilities as "fair" – meaning the ability is seriously limited but not precluded – and the others as "poor or none" – meaning that Claimant has "[n]o useful ability to function in th[e] area." *See* R. 491-93.

---

[10]Claimant has a long history of psychiatric treatment with Dr. Luke commencing in 2005. *See* R. 491 ("a patient since May 2005").

12

Dr. Luke rated Claimant as fair in his abilities to maintain socially appropriate behavior, understand and remember very short and simple instructions, carry out those types of instructions, and ask simple questions or request assistance. R. 491-92. He rated Claimant as poor in various abilities, including: interacting appropriately with the public; adhering to basic standards of neatness and cleanliness; maintaining attention and concentration for two-hour segments; maintaining regular attendance and punctuality; sustaining an ordinary routine; working in coordination or proximity to others without being unduly distracted; making simple, work-related decisions; performing at a consistent pace without an unreasonable number or length of rest periods; getting along with coworkers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stress; and understanding, remembering, and carrying out detailed instructions. R. 491-93. Dr. Luke also opined that Claimant would miss work more than twice a month. R. 493.

That same month, Dr. Borchardt completed a form titled "Medical Opinion Re: Ability to do Physical Activities." *See* R. 488-90. He identified diagnoses of obesity and chronic back disease and noted a fair prognosis. R. 488. He opined that Claimant could walk one block before needing to rest; continuously sit forty-five minutes at one time; continuously stand for fifteen minutes at one time; stand/walk less than two hours in an eight-hour workday; sit for at least six hours in a workday; and lift/carry ten pounds or less occasionally. R. 488-89. He further opined that Claimant could not bend, twist, or lift/carry twenty pounds or more, but had no significant limitation with respect to repetitive reaching, handling, or fingering and would have no need to alternate between sitting and standing at will, take unscheduled breaks, elevate either leg with prolonged sitting, or use an assistive device with standing or walking. *Id.* Finally, he opined that Claimant's physical impairments would

13

cause no absences from work. R. 490.

The next month, Claimant visited Dr. Borchardt for examination and x-rays. R. 608. His review of Claimant's systems was notable only for the presence of back pain in lumbar spine for a "long time" and needing x-ray. *Id.* Physical examination revealed full range of motion of the neck and normal strength in all muscles. R. 609-10. Examination of the lumbosacral spine revealed normal movements and no swelling, edema, or erythema of surrounding tissue, but there was some tenderness, R. 610. Dr. Borchardt assessed chronic back pain and sent Claimant for lumbar x-rays. *Id.* An x-ray revealed "[m]ild to moderate multilevel degenerative changes," but no significant interval change or evidence of acute fracture or subluxation. R. 612, 614.

In April 2015, Dr. Luke completed a second Medical Opinion Questionnaire. *See* R. 632-34. Six of the rated abilities had improved to fair: interacting appropriately with the public; using public transportation; making simple work-related decisions; getting along with coworkers without distracting them or exhibiting behavioral extremes; being aware of normal hazards and taking appropriate precautions; and setting realistic goals or making plans independently of others. *See id.* He again opined that Claimant would miss work more than twice a month and also noted that Claimant was using marijuana for his back pain. R. 634.

That same month, an unidentified source[11] completed the same form completed by Dr. Borchardt – "Medical Opinion Re: Ability to do Physical Activities." R. 629-31. The source listed high blood pressure as the only diagnosis. R. 629. The source opined that Claimant could walk two blocks before needing to rest; continuously sit for more than two hours at one time; continuously stand for fifteen minutes at one time; stand/walk less than two hours in an eight-hour workday; sit

---

[11]The form is illegibly signed with no printed name.

14

for at least six hours in a workday; occasionally twist and climb stairs; and lift/carry fifteen pounds or less occasionally. R. 629-31. He further opined that Claimant could bend or twist only 15% of the time; could not stoop, crouch, climb ladders, or lift/carry more than fifteen pounds; and had significant limitations with respect to repetitive reaching, handling, or fingering. R. 630-31. Claimant would have no need to alternate between sitting and standing at will, elevate either leg with prolonged sitting, or use an assistive device with standing or walking, but would require an hourly break. R. 629-30. In addition, Claimant's physical impairments would cause no absences from work. R. 631.

In a commendably thorough manner, the ALJ specifically identified and discussed these medical records and opinions in addition to others, including many that predate Claimant's alleged onset date of disability. *See* R. 21-25 However, after identifying these opinions and records while discussing the severity of Claimant's impairments, the ALJ failed to directly address whether any opinion of a treating source was entitled to controlling weight and failed to assign specific weight to all medical opinions. *See* R. 28-29. He did not expressly assign weight to any opinions other than some from Dr. Borchardt and two state agency non-examining consultants. *See id.*

The ALJ gave "little weight" to opinions of Dr. Borchardt regarding Claimant's abilities to walk, sit, and stand. R. 28. In doing so, the ALJ noted that Dr. Borchardt "did not give the claimant limitations during his multiple exams," but instead "generally noted that the claimant was doing well with normal examination and range of motion of the lumbar spine" while "also counsel[ing] the claimant on proper diet and exercise." *Id.* The ALJ also gave "some weight" to the agency consultant who opined that Claimant could perform medium work and "had no postural limitations." R. 28-29 (citing to Ex. B2A, which contains medical opinions of Randal Reid, M.D.). Despite those

opinions, the ALJ found Claimant capable of no more than light work with additional limitations of occasional crouching, stooping, and climbing ladders, ropes, and scaffolding. R. 29. The ALJ also gave "great weight" to the agency mental health consultant "who opined the claimant had mild restrictions of activities of daily living and moderate difficulties maintaining social functioning or maintaining concentration, persistence or pace." *Id.* (citing Ex. B2A, which contains mental health medical opinions of Susan Posey, Psy.D.).

As treating sources, the medical opinions of Dr. Luke and Dr. Borchardt are entitled to controlling weight if well-supported as required by the regulations and not inconsistent with other substantial evidence. The ALJ did not accord their opinions controlling weight, but instead gave opinions of Dr. Borchardt "little weight" while not specifying the weight given to opinions of Dr. Luke. *See* R. 28-29. At this point, there is no need to determine whether the ALJ erred in not giving the opinions controlling weight because even if the Court were to find no error in that respect, such finding merely clears the first hurdle. Once the ALJ finds that a medical opinion of a treating source is not entitled to controlling weight, he or she must make the detailed analysis required by 20 C.F.R. § 404.1527(c) unless there is reliable medical evidence from a treating or examining physician controverting the opinions of the treating source.

The ALJ in this case relied on no treating or examining source to controvert any opinion of Dr. Borchardt or Dr. Luke. Nor did the ALJ recite the six factors, although she does note in conclusory fashion that she had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527" and various social security rulings. *See* R. 27. However, an ALJ cannot substitute a general, conclusory statement for consideration of the six factors. The record reflects that the ALJ considered the examining and treatment relationships between the doctors and Claimant (factors

16

1 and 2), but the ALJ decision is mostly lacking when it comes to considering the third (support for the opinions in the record) and fourth (consistency with the record as a whole) factors. It thus appears that the ALJ procedurally erred by not more fully considering the relevant factors and weighing the opinions of Dr. Luke and Dr. Borchardt.

The Commissioner concedes that the ALJ did not state the weight accorded to the opinions of Dr. Luke. Def.'s Br. at 7. She makes no attempt to argue that the ALJ considered the relevant factors with respect to his opinions. *See id.* at 8-12. However, with respect to the opinions of Dr. Borchardt, she contends that the ALJ properly considered the support and consistency factors when she concluded that his treatment notes did not support his medical source statement. *Id.* at 10. Of course, comparing specific medical opinions with a doctor's own treatment notes is part of both factors 3 and 4. In most cases, however, both factors require more than just that comparison. The fourth factor specifically requires consistency with the record as a whole, which naturally includes a comparison with other sources. The third factor likewise requires ALJs to review the record for support for the opinions. Perceived inconsistencies between treatment notes and a specific medical opinion may be reviewed differently when other evidence of record supports the opinions or when the opinion is consistent with the administrative record as a whole.

Moreover, in this case, the ALJ merely noted that Dr. Borchardt (1) had not "give[n] the claimant limitations during his multiple exams," (2) had "generally noted the claimant was doing well with normal examination and range of motion of the lumbar spine," and (3) had "counseled the claimant on proper diet and exercise." R. 28. With respect to the first reason, it should go without saying that treatment notes serve a different purpose than the questionnaire completed by Dr. Borchardt. Consequently, treatment notes may not specifically list a patient's limitations in the same

17

manner or even at all. This seems especially true when the patient does not have a specific job to which he seeks to return to work. Similarly, the fact that a treating physician counseled an obese patient about proper diet and exercise says little, if anything, about the patient's functional limitations and ability to perform work activities on a consistent basis sufficient to perform a prior relevant job or a job available in the national economy. Additionally, the second stated reason might hold more weight in the absence of the consultative examination by Dr. Adams in October 2014, which supports greater physical limitations than suggested by the early records of Dr. Borchardt.

The Court should find that the ALJ erred when she did not consider all relevant factors and failed to properly weigh the opinions of Dr. Luke and Dr. Borchardt. A procedural error does not require reversal and remand, however, unless the error affects the substantial rights of the claimant. *Snodgrass v. Colvin*, No. 3:11-CV-0219-P, 2013 WL 4223640, at *7 (N.D. Tex. Aug. 13, 2013) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). To warrant reversal, the error must "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Ware v. Colvin*, No. 3:11-CV-1133-P, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

On the record before the Court, the failure to conduct the detailed analysis is not harmless error. Dr. Borchardt provided the only reliable medical opinion from a treating or examining source that assessed Claimant's abilities to sit, stand, and walk in a work setting. In addition, Dr. Luke provided medical opinions on Claimant's mental functional capacity to work. The ALJ did not mention Dr. Luke or two examining sources – Dr. Adams and Dr. Rasco – when considering the

18

medical opinion evidence. *See* R. 28-29. The ALJ did not assign any weight to opinions of Dr. Luke or to Dr. Rasco, an examining psychologist. Nor did she assign weight to the other examining source, Dr. Adams, who made findings and opinions that appear consistent with many of Dr. Borchardt's opinions. She also did not compare the opinions of Dr. Adams with those of Dr. Borchardt. On the record before the Court, the failure to conduct the detailed analysis is not harmless error.

Rather than properly weigh and consider these medical opinions in accordance with the regulation and *Newton*, the ALJ accorded greater weight to medical opinions of the non-examining consultants (Dr. Reid and Dr. Posey). *See* R. 28-29. Dr. Posey found mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. R. 171. From his review of the medical record, Dr. Reid opined that Claimant could occasionally carry fifty pounds, twenty-five frequently, and could stand/walk for about six hours out of an eight-hour workday and sit for a similar period of time. R. 173. The ALJ accepted Dr. Reid's opinions that Claimant could stand/walk for six hours in an eight-hour workday and sit six hours, whereas Dr. Borchardt had opined that Claimant could stand/walk for less than two hours in a workday. The ALJ also did not incorporate opinions of Dr. Luke into his mental RFC.

In making her physical and mental RFC assessments, the ALJ rejected specific medical opinions of Dr. Borchardt and Dr. Luke. Had the ALJ properly considered their opinions, it is conceivable that she may have reached a different conclusion. Furthermore, rejecting medical opinions when there is no contrary opinion from a treating or examining source requires usurping the physicians' role. *See Newton*, 209 F.3d at 453-58. "That is neither the role of the ALJ nor this Court. Neither the courts nor ALJs may rely on their own medical opinions as to the limitations

19

presented by a claimant's impairments." *Howeth v. Colvin*, No. 3:12-CV-0979-P, 2014 WL 696471, at *11 (N.D. Tex. Feb. 24, 2014) (citing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (per curiam) (reversing denial of benefits when the ALJ impermissibly relied on his own medical opinions as to limitations presented by the claimant's impairments)). It is reversible error for ALJs to substitute their own medical opinions for those of a treating physician. *Evans v. Colvin*, No. 1:14-CV-202-BL, 2015 WL 9685552, at *3 (N.D. Tex. Dec. 8, 2015) (recommendation of Mag. J.), *adopted by* 2016 WL 112645 (N.D. Tex. Jan. 8, 2016).

Like *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *See* 209 F.3d at 458. While the ALJ relied on medical opinions of agency consultants, such opinions do not constitute first-hand medical evidence, because they were formed on a second-hand basis from a review of then existing medical records. The ALJ did not specifically find any opinion more well-founded than those of Dr. Borchardt or Dr. Luke. Like *Newton*, this is not "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.*

Instead, like *Newton*, the ALJ in this case rejected medical opinions of Dr. Borchardt and Dr. Luke based only on opinions of non-examining sources. *See id.* The ALJ erred to the extent she relied on opinions of the non-examining consultant without proper consideration of the treating sources. Furthermore, to the extent the ALJ perceived a need for an additional or updated medical opinion, she took no steps to secure such opinion from any medical expert.

The Commissioner in this case decided against the Claimant at Step 4 based on testimony

of a VE who identified the flagger position as light work that a person with Claimant's assessed RFC could perform. R. 29. Had the ALJ properly considered the medical opinions of Dr. Borchardt and Dr. Luke, there is a realistic possibility that her RFC assessment would have changed. The opinions of Dr. Borchardt support physical limitations greater than the RFC assessment. Similarly, opinions of Dr. Luke support mental limitations greater than the RFC assessment and also opines that Claimant would miss more than two days of word per month. A change in the limitations within the questioning to the VE would cast doubt upon the VE's testimony that the ALJ utilized to find that Claimant could perform his prior flagger job. The VE even testified that more than two absences a month would preclude employment as a flagger or any other position. R. 146.

The Court should find that the ALJ improperly considered and weighed opinions of Dr. Borchardt and Dr. Luke. The ALJ failed to perform the detailed analysis required by 20 C.F.R. § 404.1527. Had she conducted that analysis and properly considered and weighed the opinions of the treating sources there is a realistic possibility that she would have altered the hypothetical to the VE. Given the relied upon testimony of the VE and the discounted opinions of the two treating sources, the procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Claimant's substantial rights have been affected by the consideration and weight accorded to the opinions of the treating sources by the ALJ. This procedural error is not harmless and warrants remand. There is no need to further consider the separately alleged errors in considering opinions of the examining sources, Dr. Adams and Dr. Rasco.

In briefing in this case, the Commissioner notes that the ALJ discussed each of the opinions at issue in this appeal and argues that the ALJ properly evaluated the opinions of Dr. Luke and Dr. Borchardt despite the failure to make any statement as to the weight given to Dr. Luke's opinions.

Def.'s Br. at 5, 8-12. The Commissioner contends that the ALJ incorporated opinions within Dr. Luke's second questionnaire into her RFC assessment. *Id.* at 9. The Commissioner also focuses on the check-the-box format of Dr. Luke's and Dr. Borchardt's completed questionnaires while arguing that such format typifies a brief and conclusory statement. *Id.* at 5, 9.

The ALJ indeed discussed the opinions at issue. That discussion, however, does not supplant the required consideration of the regulatory factors or the requirement that each opinion be properly weighed.

Although the Commissioner contends that the ALJ incorporated more recent opinions of Dr. Luke into her mental RFC assessment of Claimant, the ALJ never says that, and even if the Court were to accept the contention, it still does not explain the disregard for other opinions of Dr. Luke in the RFC assessment. The more recent opinions merely showed six abilities as improving from essentially non-existent to fair, which still reflects a serious limitation. The ALJ's mental RFC assessment limits Claimant to (1) performing simple and detailed tasks but not complex ones, (2) interacting with others, and (3) accepting instructions and responding appropriately to routine changes. R. 27. This mental RFC does not reflect the severe limitations noted by Dr. Luke, including interacting appropriately with the public; making simple work-related decisions; getting along with coworkers; or understanding, remembering, and carrying out very short and simple instructions. Nor does it reflect any ability rated poor by Dr. Luke.

The Commissioner's focus on the check-the-box format likewise does not dictate a different outcome. While "the 'questionnaire' format typifies 'brief or conclusory' testimony," *Foster v. Astrue*, 410 F. App'x. 831, 833 (5th Cir. 2011) (per curiam), use of such format does not justify rejecting opinions of a treating source without properly considering the regulatory factors. *See Long*

*v. Berryhill*, No. 1:16-CV-0143-BL, 2017 WL 4083638, at *7 (N.D. Tex. Aug. 28, 2017) (recommendation of Mag. J.) *adopted by* No. 1:16-CV-143-C, 2017 WL 4083576 (N.D. Tex. Sept. 14, 2017). The Commissioner's broad construction of *Foster* is unwarranted by the facts of that case and by *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See Usery v. Berryhill*, No. 6:15-CV-0049-BL, 2017 WL 3917160, at *9 (N.D. Tex. Sept. 6, 2017).

The Fifth Circuit, furthermore, has characterized *Foster* as declining to accord responses in a check-the-box format "controlling weight when they lack 'explanatory notes' or 'supporting objective tests and examinations.'" *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (per curiam). Considering opinions of a treating source invokes a three step process: (1) identifying relevant medical opinions, (2) determining whether such opinions are entitled to controlling weight, and (3) assessing the weight to give to each opinion using the regulatory factors when controlling weight is unwarranted. The controlling weight determination differs from and occurs before determining the amount of weight to accord each opinion. In this case, the ALJ erred at the third step of this process.

## IV.    CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that the administrative law judge committed reversible error by not properly considering opinions of Claimant's treating sources. The undersigned thus **RECOMMENDS** that the district court **REVERSE** the Commissioner's decision to deny benefits and **REMAND** this case for further administrative proceedings consistent with this recommendation.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** 28 **day of September, 2017.**

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**